1

2

3

4

5

6

7

8

9

10

11                    **IN THE UNITED STATES DISTRICT COURT**

12                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

13

14
JENNIFER JESKE,                          CASE NO. CV F 11-1838 LJO JLT

15
                    Plaintiff,            ORDER ON DEFENDANTS' F.R.Civ.P. 12
16                                         MOTION TO DISMISS
        vs.                               (Doc. 9.)
17
MAXIM HEALTHCARE SERVICES,
18   INC, et al.,

19                    Defendants.

20  _____/

21                            **INTRODUCTION**

22          Defendants Maxim Healthcare Services, Inc. ("Maxim") and two of its supervisors seek to

23  dismiss plaintiff Jennifer Jeske's ("Ms. Jeske's") wage and hour violation claims as inadequately pled

24  and lacking necessary elements.  Ms. Jeske counters that the claims alleged in her original complaint

25  ("complaint") are pled adequately to defeat defendants' challenges.  This Court considered defendants'

26  F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the January 13, 2012 hearing,

27  pursuant to Local Rule 230(g).  For the reasons discussed above, this Court DISMISSES nearly all of

28  Ms. Jeske's claims.

                                        1

1

## BACKGROUND[1]

2      Maxim provides medical staffing as an independent contractor to clients, including Wasco State

3  Prison ("Wasco").  Wasco, an inmate reception center, processes new inmates with its 400-bed, medium

4  custody facility.  During April 2010 to October 2010, Maxim employed Ms. Jeske as a non-exempt,

5  certified nursing assistant who was staffed at Wasco.  Ms. Jeske generally worked from 10:30 p.m. to

6  6:30 a.m. five days per week.  Her duties included watching suicidal inmates and providing inmate care

7  at the Wasco clinic.  Defendant Alvin Tagayun ("Mr. Tagayun") was an account manager/supervisor of

8  Ms. Jeske.  Defendant Ashley Blankenship ("Ms. Blankenship") was an manager/supervisor of Ms.

9  Jeske.[2]

10      On behalf of Ms. Jeske, the complaint alleges seven California wage and hour violation, fraud

11  and wrongful termination claims.[3]  More specifically, the complaint alleges that defendants failed to

12  provide Ms. Jeske proper meal and rest periods, failed to pay her timely premium wages, defrauded her

13  into working for Maxim, and wrongfully terminated her in violation of public policy.  On behalf of Ms.

14  Jeske and other aggrieved Maxim employees, the complaint alleges 11 claims to pursue civil penalties

15  pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code, §§ 2698, et al.

16  More specifically, the complaint alleges that as to Ms. Jeske and other aggrieved employees, Maxim

17  failed to provide accurate wage records, adequate seating and sanitary bathrooms, and to maintain

18  adequate room temperatures.

19      The complaint seeks to recover unpaid wages, civil penalties, attorney fees, damages for Ms.

20  Jeske's emotional distress, and punitive damages.

21      Defendants fault the complaint's failure to meet federal pleading standards and to establish that

22  Mr. Tagayun and Ms. Blankenship are employers or corporate agents, officers or directors subject to the

23  complaint's claims.

24  / / /

25

26      [1]      The factual recitation is derived generally from the complaint.

27      [2]      Maxim, Mr. Tagayun and Ms. Blankenship will be referred to collectively as "defendants."

28      [3]      The complaint's 18 separate claims will be discussed in greater detail below.

2

**DISCUSSION**

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

The primary thrust of defendants' challenges to the complaint's claims is that they are conclusory and lack supporting facts.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

1   *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

2   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

3   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

4   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either

5   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

6   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

7   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

8           In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

9   explained:

10          . . . a complaint must contain sufficient factual matter, accepted as true, to "state
    a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
11  plaintiff pleads factual content that allows the court to draw the reasonable inference that
    the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
12  akin to a "probability requirement," but it asks for more than a sheer possibility that a
    defendant has acted unlawfully. (Citations omitted.)
13

14          After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint

15  to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content,

16  must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572

17  F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

18          The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

19          First, the tenet that a court must accept as true all of the allegations contained in
    a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
20  a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,
    only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
21  . Determining whether a complaint states a plausible claim for relief will . . . be a
    context-specific task that requires the reviewing court to draw on its judicial experience
22  and common sense. . . . But where the well-pleaded facts do not permit the court to infer
    more than the mere possibility of misconduct, the complaint has alleged – but it has not
23  "show[n]"–"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

24          In keeping with these principles a court considering a motion to dismiss can
    choose to begin by identifying pleadings that, because they are no more than conclusions,
25  are not entitled to the assumption of truth. While legal conclusions can provide the
    framework of a complaint, they must be supported by factual allegations. When there are
26  well-pleaded factual allegations, a court should assume their veracity and then determine
    whether they plausibly give rise to an entitlement to relief.
27

28  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

4

1    Moreover, a plaintiff suing multiple defendants "must allege the basis of his claim against each

2   defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement

3   of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v.*

4   *Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988).  "Specific identification of the parties to the

5   activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently."

6   *Van Dyke Ford, Inc. v. Ford Motor Co.,* 399 F.Supp. 277, 284 (D. Wis. 1975).

7    With these standards in mind, this Court turns to defendants' challenges to the complaint's

8   claims.

9    **Ms. Jeske's Unpaid Wages**

10    The complaint's first claim alleges that Maxim failed to pay all of Ms. Jeske's earned wages in

11   that she was not paid her meal and rest period wages, waiting time penalties, and other due compensation

12   to violate California Labor Code section 204.[4]

13    Defendants argue that no private right of action exists under section 204 which provides for only

14   civil penalties.  Section 204(a) provides that wages "are due and payable twice during each calendar

15   month, on days designated in advance by the employer as the regular paydays."  Defendants argue that

16   section 204 "does not provide any right to wages" in that it addresses wage payments "at certain

17   intervals." *See In re Moffet*, 19 Cal.App.2d 7, 13, 64 P.2d 1190 (1937) ("sole purpose" of the statute "is

18   to require an employer of labor who comes within its terms to maintain two regular pay days each

19   month").

20    Defendants continue that a section 204 violation remedy is limited to a civil penalty under section

21   210(a) which provides that "every person who fails to pay the wages of each employee as provided in

22   Sections . . . 204 . . . shall be subject to a civil penalty . . ."  Under section 210(b), the "penalty shall be

23   recovered by the Labor Commissioner as part of a hearing held to recover unpaid wages and penalties

24   pursuant to this chapter or in an independent civil action. The action shall be brought in the name of the

25   people of the State of California and the Labor Commissioner and the attorneys thereof may proceed and

26   act for and on behalf of the people in bringing these actions."

27

28    [4]    Unless otherwise noted, all further statutory "section" references will be to the California Labor Code.

5

Defendants point to the absence in sections 204 and 210 of "'clear, understandable, unmistakable terms'" that a private right of action exists for violations of section 204. "If the Legislature had truly intended to create a private right to sue one would reasonably have expected that the Legislature simply would have directly imposed such liability in clear, understandable, unmistakable terms, as it has done in numerous other statutes." *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal.App.4th 121, 132, 62 Cal.Rptr.2d 620 (1997) (internal quotations omitted). "Thus when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." *Crusader Ins.*, 54 Cal.App.4th at 133, 62 Cal.Rptr.2d 620; *see Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 300, 250 Cal.Rptr. 116 (1988) (fact that creation of a private right of action is not observed "is a strong indication the Legislature never intended to create such a right of action").

In *Vikco Ins. Services, Inc. v. Ohio Indem. Co.,* 70 Cal.App.4th 55, 62-63, 82 Cal.Rptr.2d 442 (1999), the California Court of Appeal further explained:

> Adoption of a regulatory statute does not automatically create a private right to sue for damages resulting from violations of the statute. Such a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature intended to create such a right to sue for damages. If the Legislature intends to create a private cause of action, we generally assume it will do so " 'directly[,] . . . in clear, understandable, unmistakable terms. . . .' [Citation.]" ( *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 294-295 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal* ); *see also Crusader Ins. Co. v. Scottsdale Ins. Co.*, *supra*, 54 Cal.App.4th at pp. 125-137 [because a judge may not insert what has been omitted from a statute, legislative intent alone determines whether a statute creates a new private right to sue]; *Schaefer v. Williams* (1993) 15 Cal.App.4th 1243, 1248 [19 Cal.Rptr.2d 212] [nothing in Elections Code creates a private cause of action to enforce a pledge to follow fair campaign practices; "Surely, if the Legislature had intended to create such a private action, it would have done so by clear and direct language"]; *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1444-1445 [2 Cal.Rptr.2d 683] [absent some express provision for civil liability, courts cannot assume a private cause of action for negligence may be brought any time a legislative enactment is violated].)

Moreover, "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Passenger Corp. v. Passengers Assn.,* 414 U.S. 453, 458, 94 S.Ct. 690 (1974).

Ms. Jeske offers no meaningful argument for survival of the complaint's (first) unpaid wages claim. Ms. Jeske merely recites the complaint's allegations that she was not paid her meal and rest period wages, waiting time penalties and other compensation due. Ms. Jeske offers that the claim's basis

1   is "Defendant's failure to pay her wages that were owing to Plaintiff."  Ms. Jeske fails to demonstrate

2   that she is entitled to pursue a private right of action for a section 204 violation and offers nothing to

3   suggest that she can rehabilitate the claim.  As such, the complaint's (first) unpaid wages claim is

4   dismissed with prejudice.

5   **Ms. Jeske's Missed Meal Periods**

6   The complaint's second claim alleges that Maxim "failed to provide Plaintiff with the required

7   meal periods for numerous days worked" in that Ms. Jeske "worked for more than 6 hours per day

8   without a meal break" to entitle Ms. Jeske "to one additional hour of wage at the employee's regular rate

9   of compensation for each workday that the meal periods were not provided."

10   Section 512 and related California labor laws require an employer to provide no less than a 30-

11   minute meal period when the employee works more than five hours in a day.

12   Defendants challenge the claim as "conclusory" with "no factual basis . . . that Maxim failed to

13   provide her with required meal periods."  Defendants point to the absence of facts to support how Ms.

14   Jeske was denied meal periods, who denied them, and when they were denied.  Defendants continue that

15   although meal and rest period premiums are mandated payments under section 226.7, they are not

16   contractually agreed upon "wages" to which section 204 applies.

17   Defendants are correct that the claim lacks facts to demonstrate that Maxim denied Ms. Jeske

18   meal breaks.  The claim merely alludes to "numerous days worked" without meal periods.  Similar to

19   the complaint's (first) unpaid wages claim, Ms. Jeske offers nothing meaningful to support survival of

20   the (second) meal period premiums claim.  Ms. Jeske merely reiterates the claim's allegations and

21   provides no insight how to rehabilitate the claim.  Despite Ms. Jeske's lack of meaningful support for

22   the missed meal periods claim, she is granted leave to amend the claim.

23   **Ms. Jeske's Missed Rest Periods**

24   The complaint's third claim alleges that Maxim "failed to provide Plaintiff with the rest periods

25   at the rate of ten minutes net rest per four hours of work or major fraction thereof" to entitle Ms. Jeske

26   to one additional hour of wage at her regular compensation rate for each workday that rest periods were

27   not provided.

28   California Industrial Welfare Commission Wage Order 4-2001, Section 12 ("Section 12")

1    requires rest periods "based on the total hours worked daily at the rate of ten (10) minutes net rest time

2    per four (4) hours or major fraction thereof."   Section 226.7 prohibits an employer to require an

3    employee to work during a mandated meal or rest period.

4         Defendants fault the claim as "devoid of facts" and characterize it as "a recitation of applicable

5    law" and "legal conclusions referencing" Maxim.  Defendants criticize the claim's failure to apprise

6    "how rest periods were allegedly not made available."

7         Defendants are correct that the claim lacks facts as to when and how Maxim denied Ms. Jeske

8    rest periods.  The claim merely alleges denial of rest periods and nothing more.  Ms. Jeske again points

9    to the claim's skeletal allegations to claim they are sufficient. Ms. Jeske offers no meaningful resistance

10   to dismissal of the claim and fails to challenge defendants' points.  Despite Ms. Jeske's meaningless

11   defense of the claim, this Court grants Ms. Jeske leave to amend her missed rest periods claim.

12                              **Ms. Jeske's Waiting Time Penalties**

13        The complaint's fourth claim alleges that Maxim refused to pay Ms. Jeske her unpaid wages for

14   meal and rest period premiums required by section 203 to entitle her to waiting time penalties of 30

15   days' wages.

16        Section 201 requires within 72 hours, payment of employee wages when an employee quits.

17   Section 203 provides: "If an employer willfully fails to pay, without abatement or reduction, in

18   accordance with Sections 201 . . ., any wage of an employee who is discharged or who quits, the wages

19   of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until

20   an action therefor is commenced; but the wages shall not continue for more than 30 days."

21        Defendants construe the claim to seek section 203 penalties for willful failure to pay final wages

22   timely on termination.  Defendants fault the claim's failure to identify "what wages were earned and

23   unpaid at the time of her termination" and "how and in what manner a final wage payment was

24   untimely" under Section 201 or 202. Defendants point to uncertainty whether the complaint alleges that

25   defendants paid Ms. Jeske untimely when she terminated or that the final timely pay check did not cover

26   all wages owed. Defendants note that the complaint's limited reference to unpaid wages is allegedly

27   unpaid meal and rest period premiums which are not wages under section 203 and not subject to waiting

28   time penalties.  Defendants further fault the absence of allegations of Maxim's willfulness to fail to pay

8

final wages.

Defendants raise valid points.  The complaint fails to identify sufficiently wages at issue and to articulate Maxim's willful failure to pay such wages.  Ms. Jeske offers that she "has alleged sufficient facts to apprise Defendant of its wrongful conduct."  Based on a decision interpreting an applicable statute of limitations, Ms. Jeske characterizes payment of an additional hour as wages rather than a penalty.  *See Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1102, 155 P.3d 284 (2007).  Such characterization is unavailing in that the complaint fails to identify adequately untimely paid wages to warrant dismissal of the waiting time penalties claim with leave to amend.

**Fraud**

The complaint's (fifth) fraud – deceit and misrepresentation claim alleges that Maxim promised to pay Ms. Jeske $12 per hour but that she was paid $10 per hour with her first pay check.  The fraud claim further alleges that Ms. Jeske complained "about the misrepresentation until eventually Defendants agreed to pay her $11 per hour" but never paid her "the $12 per hour that she had originally been promised."

Defendants attack the misrepresentation claim as lacking sufficient particularity to satisfy F.R.Civ.P. 9(b).

*Fraud Elements*

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance.  *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action."  *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

*Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

### *Particularity Pleading Standard*

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements.  *Vess*, 317 F.3d at 1107.[6]  A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.  *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th

---

[5]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[6]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

Cir. 1997)).  The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud.  The statement in question must be false to be fraudulent.  Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .  The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 541 ("Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

Defendants challenge the complaint's failure to identify who made the allegedly false promise to pay $12 per hour and that person's authority to speak for Maxim.  Defendants fault the absence of facts that "the promise of $12 per hour was made with knowledge of its falsity and an intent to defraud Plaintiff."  Defendants point to the absence of allegations that Ms. Jeske relied "on a false promise or how that reliance damaged her."  Defendants attribute the complaint to allege no more than a "breach of promise which is wholly inadequate." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2nd Cir. 1993) (failure to carry out a promise "does not constitute fraud unless, when the promise was made, the

1    defendant secretly intended not to perform or knew that he could not perform").

2        The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard.  Ms. Jeske

3    appears to concede as much as she merely offers that the complaint alleges "the requisite elements of

4    a fraud claim."  The complaint lacks precise allegations as to whom at Maxim specifically made a $12

5    per hour promise and when. The complaint lacks facts to support fraud elements let alone the who, what,

6    when, when and how of alleged misconduct.  Defendants correctly equate the fraud claim to no more

7    than a contract breach, especially given the lack of facts to support fraud elements of scienter, intent to

8    defraud, Ms. Jeske's justifiable reliance, and resulting damages.  The complaint fails to plead in full,

9    factually and specifically, all fraud elements to warrant dismissal with prejudice of the fraud claim.

10                    **Wrongful Termination In Violation Of Public Policy**

11        The complaint's (seventh) wrongful termination in violation of public policy claim ("*Tameny*

12   claim") alleges that Ms. Jeske complained about failure to provide meal and rest breaks, suitable seating,

13   and functional, sanitary bathrooms, to maintain adequate temperature, and to pay a promised hourly rate.

14   The claim further alleges that Maxim, in violation of California public policy, constructively discharged

15   Ms. Jeske "in retaliation for asserting her statutory rights and resisting employer's violations of laws that

16   secure important public policies."[7]

17        Defendants fault the complaint's failure to allege facts of a constructive discharge.

18        "Under the constructive discharge doctrine, an employee's reasonable decision to resign because

19   of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The

20   inquiry is objective: Did working conditions become so intolerable that a reasonable person in the

21   employee's position would have felt compelled to resign?" *Penn. State Police v. Suders*, 542 U.S. 129,

22

23            [7]      The complaint purports to allege a claim under *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172, 164
     Cal.Rptr. 839, 842 (1980) ("an employer's traditional authority to discharge an at-will employee may be limited by statute
24   . . . or by considerations of public policy").  There can be no right to terminate for an unlawful reason or purpose that
     contravenes fundamental public policy.  *Silo v. CHW Med. Found.*, 27 Cal.4th 1097, 1104, 119 Cal.Rptr.2d 698, 703 (2002).
25   "It is settled that an employer's discharge of an employee in violation of a fundamental public policy embodied in a
     constitutional or statutory provision gives rise to a tort action."   *Barton v. New United Motor Manufacturing, Inc.*, 43
26   Cal.App.4th 1200, 1205, 51 Cal.Rptr.2d 328 (1996); *Cabesuela v. Browning-Ferris Industries of Cal., Inc.*, 68 Cal.App.4th
     101, 107, 80 Cal.Rptr.2d 60 (1998).  The plaintiff's remedy is a common law tort action: "A wrongful act committed in the
27   course of a contractual relationship may afford both tort and contractual relief." *Tameny*, 27 Cal.3d at 174-175, 164 Cal.Rptr.
     at 843.

28

                                         12

1   141, 124 S.Ct. 2342 (2004) (citation omitted).

2        An employee is constructively discharged when "a reasonable person in his position would have

3   felt that he was forced to quit because of intolerable and discriminatory working conditions."

4   *Satterwhite v. Smith*, 744 F.2d 1380, 1382 (9th Cir. 1984).  Courts are reluctant to predicate constructive

5   discharge "solely on the fact of employment discrimination" and look for "aggravating factors," such

6   as a "continuous pattern of discriminatory treatment." *Clark v. Marsh*, 665 F.2d 1173, 1174 (9th Cir.

7   1984).

8        Defendants note the absence of allegations that Ms. Jeske "was forced to quit" and fault the

9   complaint's conclusions that she was "constructively discharged" and labeled a troublemaker.

10  Defendants argue that such allegations fail to establish protected activity, especially given the absence

11  of facts to describe Ms. Jeske's complaints.  Defendants further fault the complaint's failure to allege

12  violation of a public policy to satisfy elements of a *Tameny* claim.  For "a policy to support a wrongful

13  discharge claim, it must be: (1) delineated in either constitutional or statutory provisions; (2) 'public'

14  in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the

15  individual; (3) well established at the time of the discharge; and (4) substantial and fundamental."

16  *Stevenson v. Superior Court*, 16 Cal.4th 880, 894, 941 P.2d 1157 (1997).  Defendants note that the

17  *Tameny* claim fails to identify a "specific constitutional or statutory provision" which Maxim violated.

18  Defendants fault the *Tameny* claim's mere reference to discharge "against the public policy of the State

19  of California as evidenced by the enactment of the Labor Code provisions and Wage Orders referenced

20  above."

21       Ms. Jeske responds that failure to pay wages "owed by law and promised her" is sufficient to

22  establish necessary intolerable working conditions to compel her to resign.  Ms. Jeske attributes the

23  complaint to allege "the statutory provisions that Defendant has violated."

24       Defendants correctly note that lack of alleged facts to support objectively intolerable working

25  conditions.  The complaint points to no pattern of discriminatory treatment or similar employer conduct

26  to support constructive discharge, especially given the limited six-month duration of Ms. Jeske's

27  employment.  Defendants are further correct to fault the lack of facts of a violation of a public policy to

28  support a *Tameny* claim.  As addressed above, the complaint fails to support wage and hour violations

13

1   and in turn the necessary public policy violation for a *Tameny* claim to warrant dismissal with leave to

2   amend the complaint's (seventh) wrongful termination in violation of public policy claim.

3   **Unfair Competition Claim**

4   The complaint's sixth claim proceeds under California's Unfair Competition Law ("UCL"), Cal.

5   Bus. & Prof. Code, §§ 17200, et seq.  The claims alleges: "Defendants' violations of the Labor Code

6   provisions set forth above constitute unlawful business acts or practices."

7   Defendants argue that a UCL claim fails with the failure of the complaint's "substantive claims"

8   from which a UCL claim derives.  Defendants fault the complaint's failure to "specify which alleged

9   violations of law are the 'unlawful business acts or practices'" in that the claim merely references Labor

10  Code violations which "constitute unlawful business acts or practices."

11  "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

12  unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

13  718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

14  competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group,*

15  *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  An "unlawful business activity" includes

16  anything that can properly be called a business practice and that at the same time is forbidden by law.

17  *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159

18  Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is 'unlawful' if it is 'forbidden by law.'"

19  *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002)

20  (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

21  The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

22  or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832,

23  838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice

24  violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the

25  California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful

26  practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th

27  377, 383, 6 Cal.Rptr.2d 487 (1992).

28  A fellow district court has explained the borrowing of a violation of law other than the UCL:

14

1      To state a claim for an "unlawful" business practice under the UCL, a plaintiff
2  must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)
   (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows'
3  violations of other law and treats them as unlawful practices that the unfair competition
   law makes independently actionable.") (citation omitted). Where a plaintiff cannot state
4  a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d
5  399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her
   TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA
6  has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

7  *Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

8      "Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law,

9  or violates the policy or spirit of one of those laws because its effects are comparable to or the same as

10 a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech*

11 *Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548. The "unfairness" prong of the UCL "does

12 not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found.*

13 *Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993), *cert. denied*, 511 U.S. 1084,

14 114 S.Ct. 1835 (1994).

15     The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members

16 of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*,

17 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be

18 deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673,

19 at *5 (N.D. Cal. 2005).

20     "A plaintiff alleging unfair business practices under these statutes [UCL] must state with

21 reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's*

22 *of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

23     Defendants construe the complaint to merely allege that Ms. Jeske worked for Maxim as a

24 certified nursing assistant and that her employment ended in October 2010 such that the complaint lacks

25 facts that Ms. Jeske was improperly denied meal and rest periods and payments for denied meal and rest

26 periods and other amounts.  To attempt to support the UCL claim, Ms. Jeske notes allegations of

27 "Defendant's violation of its statutory obligations.  Such violations, because 'unlawful,' are sufficient

28 . . ."

15

1    The complaint fails to establish that defendants engaged in unlawful, unfair or fraudulent

2    business practices under the UCL.  In the absence of violation of a borrowed law, a UCL claim fails,

3    especially given the lack of reasonable particularity of facts to support a UCL claim.  Reliance on other

4    invalid claims alleged in the complaint fails to support a viable UCL claim.  The UCL claim lacks

5    particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim, especially given

6    failure of fraud-sounding claims, as discussed above.  The complaint lacks facts to hint at a wrong

7    subject to the UCL to warrant the UCL claim's  dismissal with leave to amend.

8                        **California Private Attorneys General Act**

9    The complaint alleges 11 PAGA claims to pursue civil penalties for labor violations suffered by

10   Ms. Jeske and "aggrieved employees."  Section 2699(a) provides that a Labor Code civil penalty may

11   "be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself

12   and other current or former employees."  Section 2699(c) defines an "aggrieved employee" as "any

13   person who was employed by the alleged violator and against whom one or more of the alleged

14   violations was committed." "Recovery of civil penalties under the act requires proof of a Labor Code

15   violation . . ."  *Arias v. Superior Court*, 46 Cal.4th 969, 987, 209 P.3d 923 (2009) (citing Lab. Code, §

16   2699(a), (f)).

17   Defendants challenge Ms. Jeske's ability to prove that aggrieved employees have suffered a

18   Labor Code violation.

19                                 **PAGA Exhaustion**

20   Defendants argue that Ms. Jeske "has not properly exhausted her administrative remedies" to

21   warrant dismissal of the complaint's 11 PAGA claims.

22   Section 2699.3(a)(1) requires an aggrieved employee or representative to provide "written notice

23   by certified mail to the Labor and Workforce Development Agency [("LWDA")]and the employer of

24   the specific provisions of this code alleged to have been violated, including the facts and theories to

25   support the alleged violation." Section 2699.3(a)(2)(A) requires up to 33 days notice to the LWDA prior

26   to commencement of a civil action.

27   Defendants fault Ms. Jeske's LWDA notice's failure to "describe factually . . . the alleged

28   practices and how they impacted the aggrieved employees or even who was responsible for the alleged

                                            16

1   practices – Maxim or its client Wasco State Prison.  Defendants further fault the PAGA claims as "based

2   only on bald allegations that fail to describe a common policy or practice" to satisfy F.R.Civ.P. 8.

3   Defendants challenge as "evasive" Ms. Jeske's claims that she "cannot know but Defendants would

4   know of their own violations" and that discovery will determine defendants' violations.

5          Ms. Jeske relies on the complaint's allegation that her counsel gave written notice to the LWDA

6   and defendants "stating the code violations set forth below" and the August 16, 2011 letter of Ms.

7   Jeske's counsel which Ms. Jeske characterizes as "sufficient notice of the facts and law upon which

8   Defendants' violations are based."  Ms. Jeske argues that her PAGA letter did not need to allege "who

9   was responsible for the alleged practices."

10         Defendants offer broad challenges to Ms. Jeske's August 16, 2011 notice of Labor Code

11   violations to the LWDA and defendants.  Defendants do not explain how the notice fails to describe

12   alleged practices.  Defendants point to no particular portions of the 10-page notice, which outlines

13   various alleged violations with statutory references.  Defendants' imprecise attacks fail to substantiate

14   a failure of PAGA exhaustion.

15                                   **Scope Of Aggrieved Employees**

16         Defendants challenge the complaint's scope and definition of aggrieved employees which Ms.

17   Jeske seeks to represent in that "'aggrieved employees' have not been sufficiently identified."  The

18   complaint alleges that "aggrieved employees include all employees staffed by MHS [Maxim] at state

19   and federal prisons and other facilities within the State of California."  The complaint defines aggrieved

20   employees as "[a]ll persons who were or are employed by Defendants in the State of California and

21   against whom one or more of the alleged violations described below was committed."

22         Defendants argue that the complaint lacks "fair notice as to what the scope of the PAGA claims

23   are" given the absence of "specificity as to who the persons are that the plaintiff seeks to represent."

24   Defendants hold Ms. Jeske to "identify the 'aggrieved employees' beyond the statutory language,"

25   especially given that the complaint alleges that Ms. Jeske is an aggrieved employee as to only "some"

26   of the labor violations.

27         Ms. Jeske responds that a PAGA plaintiff need not be an aggrieved employee for all alleged

28   PAGA violations in that section 2699(c) uses the phrase "against whom one or more of the alleged

                                                    17

1    violations was committed."

2         Ms. Jeske is correct that she need not have suffered all PAGA violations for which she seeks to

3    pursue civil penalties.  However, she ignores defendants' chief attack that the complaint fails to identify

4    aggrieved employees beyond reference to their Maxim employment.  The complaint is unclear as to

5    whether it seeks to pursue PAGA claims for certified nursing assistants, such as Ms. Jeske, or other

6    healthcare employees.  The complaint fails to identify how particular aggrieved employees were subject

7    to particular violations.  Ms. Jeske fails to justify the complaint's overly broad scope of aggrieved

8    employees.  This Court is unable to sanction PAGA claims for imprecisely defined aggrieved employees

9    but grants Ms. Jeske leave to amend to define precisely the aggrieved employees for whom she seeks

10   to recover civil penalties.

11                              **PAGA Claim For Unpaid Wages**

12        The complaint's eighth claim alleges that Maxim failed to pay "all wages" earned by Ms. Jeske

13   and aggrieved employees since they "were not paid meal and rest period wages, waiting time penalties

14   and other compensation."

15        Defendants fault the claim in that "neither meal or rest period premiums nor waiting time

16   penalties are due at certain intervals during employment."  As a reminder, section 204(a) provides that

17   wages "are due and payable twice during each calendar month, on days designated in advance by the

18   employer as the regular paydays."  Defendants fault the claim's failure to allege a section 204 violation.

19        Ms. Jeske argues that the (eighth) PAGA claim for unpaid wages sufficiently alleges a section

20   204 violation in that meal and rest period premiums are wages which must be paid at least semi-monthly.

21        The PAGA unpaid wages claim fails to delineate how Ms. Jeske and aggrieved employees missed

22   meal and rest periods and were entitled to waiting time penalties.  The claim rests on mere conclusions

23   to warrant its dismissal without prejudice.

24                         **PAGA Missed Meal And Rest Period Claims**

25        The complaint's ninth and tenth claims allege that defendants committed labor violations by

26   failing to provide Ms. Jeske and aggrieved employees with required meal and rest periods, by requiring

27   Ms. Jeske and aggrieved employees to work during meal and rest periods, and by failing to pay the

28   "premium" for failure to provide proper meal and rest periods.  The claims allege that Ms. Jeske and

                                                18

aggrieved employees are entitled to one additional hour of wage at the employee's regular rate of compensation for each workday during which the meal or rest period was not provided.

Defendants characterize the claims as "conclusory" in the absence of facts to describe Maxim's meal and rest period practices and "how or why [Ms. Jeske] or any aggrieved employees were allegedly not provided meal and rest periods." Defendants point to the absence of "any actual illegal conduct."

Defendants are correct that the PAGA missed meal and rest period claims are predicated on general allegations of mere failure to provide meal and rest periods. The complaint neither describes Maxim's practices to deny meal and rest periods nor articulates precisely how and when Ms. Jeske and aggrieved employees were denied meal and rest periods. The (ninth and tenth) PAGA missed meal and rest period claims are subject to dismissal with leave to amend.

## PAGA Inaccurate Records Claims

The complaint's eleventh through fifteenth claims allege that Maxim violated section 226(a) and failed to provide Ms. Jeske and aggrieved employees:

1.    A "statement of wages that accurately reported gross wages earned in so far as it failed to reflect all wages due for meal and rest period premiums";

2.    A "statement of wages that accurately reported the total hours worked";

3.    An "accurate statement of wages reporting the net wages actually earned" in that Maxim failed "to pay all wages due for meal and rest period premiums";

4.    An "accurate statement of wages showing the name and address of the legal entity that is the employer"; and

5.    An "accurate statement of wages showing the applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate."

Section 226(a) requires pay stubs of non-exempt employees to include gross and net wages earned, total hours worked, the name and address of the legal entity that is the employer, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

Defendants attribute the complaint to parse section 226(a) requirements into "five separate causes of action" although there is only one penalty for a section 226 violation, not a penalty for each

1   enumerated requirement for wage statements under section 226(a).  Defendants note that section 226(e)

2   assesses penalties "for a pay period, not for each missing element on the pay stub" in that it provides:

3   "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply

4   with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the

5   initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each

6   violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars

7   ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

8          Defendants fault the inaccurate records claims' failure to allege basic supporting facts and to

9   "show who experienced these violations, when, how, or why."  Defendants criticize the failure to explain

10  "why the name and address of the employer was incorrect on the wage statement."

11         Ms. Jeske argues that a violation of a section 226(a) subdivision gives rise to a separate penalty

12  under  section 226.3, which provides: "Any employer who violates subdivision (a) of Section 226 shall

13  be subject to a civil penalty in the amount of two hundred fifth dollars ($250) per employee per violation

14  in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent

15  citation . . ." Ms. Jeske characterizes defendants' reference to section 226(e) as irrelevant in that Ms.

16  Jeske does not assert a section 226(e) claim.

17         Defendants raise valid points as to the conclusory nature of the inaccurate records claims lacking

18  supporting facts.  The claims merely point to section 226(a) requirements and claim they were not

19  satisfied with nothing more.  The claims lack necessary facts to demonstrate defendants' failure to satisfy

20  section 226(a) requirements.  In addition, Ms. Jeske's rejection of section 226(e) in favor of section

21  226.3 is curious since section 226.3 provides for civil penalties subject to Labor Commissioner

22  enforcement by stating that "the Labor Commissioner shall take into consideration whether the violation

23  was inadvertent . . ."  Section 226(e), on the other hand, empowers an "employee suffering injury as a

24  result of a knowing and intentional failure by the employer to comply with subdivision (a)" to seek

25  recovery.  Ms. Jeske fails to substantiate that section 226.3 prevails in place of section 226(e) and that

26  she, rather than the Labor Commissioner, is entitled to pursue section 226.3 relief.  The (eleventh

27  through fifteenth) PAGA inaccurate records claims are subject to dismissal with leave to amend.

28  / / /

### Suitable Seats

The complaint's sixteenth claim alleges that employees were required to unnecessarily stand in the absence of suitable chairs to violate California Industrial Welfare Commission Wage Order 4-2001, Section 14 ("section 14"), which provides:

> (A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.
>
> (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

The claim alleges that Maxim failed to provide proper seating to Ms. Jeske and aggrieved employees "when the nature of their work permitted and required the use of proper seats" in that Maxim required employees "to monitor the activities of inmates through a small rectangular window" and "employees were either provided with unsuitable chairs, broken chairs or not chairs at all" and "were required to unnecessarily stand during work hours."

Relying on an administrative advisory opinion, defendants challenge section 14's application to Ms. Jeske's certified nursing assistant position in that section 14 "was not intended to cover those positions where the duties require employees to be on their feet." Defendants fault the claim's absence of facts that the nature of Ms. Jeske's work "reasonably permitted the use of seats" or that Maxim failed to provide her a seat. Defendants further challenge the complaint's absence of facts that Ms. Jeske requested, wanted or was denied a seat. Defendants conclude that Maxim is required to provide seats "to the extent that employees want or request them; Maxim is not required to ensure that every employee is given a seat."

The complaint fails to allege sufficient facts that the nature of Ms. Jeske's or aggrieved employees' work reasonably permits seats. The complaint appears to base the suitable seats claim on the mere allegation that employees were required to monitor employees through a small window and "unnecessarily stand." The claim lacks sufficient facts to support a section 14 claim to warrant its dismissal with leave to amend.

### Adequate Temperature

The complaint's seventeenth claim alleges that Maxim failed to maintain an adequate working

temperature to satisfy California Industrial Welfare Commission Wage Order 4-2001, Section 15

("section 15") which provides:

> (A) The temperature maintained in each work area shall provide reasonable comfort consistent with industry-wide standards for the nature of the process and the work performed.

> (B) If excessive heat or humidity is created by the work process, the employer shall take all feasible means to reduce such excessive heat or humidity to a degree providing reasonable comfort.   Where the nature of the employment requires a temperature of less than 60F, a heated room shall be provided to which employees may retire for warmth, and such room shall be maintained at not less that 68F.

> (C) A temperature of not less than 68F shall be maintained in the toilet rooms, resting rooms, and change rooms during hours of use.

The inadequate temperature claim alleges that the work environment temperature fell below "reasonable/acceptable standards" to require employees to wear heavy clothing and to bring in space heaters.  The claim concludes that "nothing was done to remedy the problems with temperature."

Defendants fault the inadequate temperature claim's failure to allege facts that Maxim "had care, custody, or control of Wasco or could control the temperature."  Defendants note the complaint's failure to explain "how or why the temperature was Wasco was not at reasonable/acceptable standards or was not consistent with industry-standards for the nature of the process and the work performed."  Defendants criticize the absence of allegations as to inadequate temperatures at workplaces where other aggrieved employees were stationed.

The inadequate temperature claim generally alleges no more than a temperature to require heavy clothing and space heaters.  The complaint lacks facts to demonstrate inadequate working temperatures, especially as to employees other than Ms. Jeske.  Moreover, the complaint fails to explain how Maxim, as supplier of certified nursing assistants, had ability to control or address the temperature.   The inadequate temperature claim is subject to dismissal with leave to amend.

### Sanitary Restrooms

The complaint's eighteen claim alleges that Maxim violated section 2350 "by failing to provide proper sanitary restrooms" to require Ms. Jeske and aggrieved employees "to work in unsanitary conditions because of, among other things, the unkempt and unclean condition of the bathrooms at Wasco."

1      Section 2350 provides:

2           Every factory, workshop, mercantile or other establishment in which one or more
       persons are employed, shall be kept clean and free from the effluvia arising from any
3      drain or other nuisance, and shall be provided, within reasonable access, with a sufficient
       number of toilet facilities for the use of the employees.  When there are five or more
4      employees who are not all of the same gender, a sufficient number of separate toilet
       facilities shall be provided for the use of each sex, which shall be plainly so designated.
5

6           Defendants argue that there is no private right of action under section 2350 in that section 2355

7      provides that the California Labor Commissioner shall enforce Article 3 of the California Labor Code,

8      which includes section 2350.   Defendants contend that section 2350 fails to provide in "clear

9      understandable, unmistakable terms" a private right of action.   Defendants further note that section

10     2699.5 enumerates California Labor Code sections which may predicate PAGA violations and that

11     section 2350 is missing.  Defendants conclude "there can be no PAGA penalties for any alleged violation

12     of section 2350."

13          Ms. Jeske does not dispute the absence of a private right of action under section 2350.  This

14     Court agrees with defendants that no private right of action exists under section 2350 to limit exposure

15     to a PAGA claim.  Ms. Jeske relies on section 2699.3(c) to permit a section 2350 PAGA claim in that

16     section 2699.3(c) references "violation of any provision other than those listed in Section 2699.5."  Ms.

17     Jeske points to a viable avenue for a section 2350 PAGA claim to limit viability of a section 2350 claim

18     under PAGA with no private right of action relief.

19                                    **Class Action Prerequisites**

20          Defendants contests the complaint's satisfaction of F.R.Civ.P. 23 prerequisites of class actions.

21     F.R.Civ.P. 23(a) provides:

22          One or more members of a class may sue . . . as representative parties on behalf
       of all members only if:
23
            (1) the class is so numerous that joinder of all members is impracticable;
24
            (2) there are questions of law or fact common to the class;
25
            (3) the claims . . . of the representative parties are typical of the claims or
26     defenses of the class; and

27          (4) the representative parties will fairly and adequately protect the interests of the
       class.
28

23

1    Defendants criticize the complaint's overbroad definition of "aggrieved employees" covering

2    "every California employee employed by [Maxim] regardless of position, location, or duties."

3    Defendants point to the absence of an "ascertainable class" bound by "common issues of fact and law"

4    and the failure of Ms. Jeske's claims as "typical of those of the class."   Defendants note that the

5    complaint's "diverse claims will require individualized inquiries into specific facts pertaining to the

6    employment of each of the allegedly aggrieved employees" to prevent "collective determination."

7    Ms. Jeske responds that her PAGA claims are "asserted on behalf of state law enforcement

8    agencies, not individual employees" to avoid class action requirements.   Ms. Jeske argues that as an

9    employee bringing PAGA claims, she need not satisfy class action requirements.   Ms. Jeske points to

10   the California Supreme Court's holding in *Arias*, 46 Cal.4th at 975, 209 P.3d 923:

11           We hold that an employee who, on behalf of himself and other employees, sues
        an employer under the unfair competition law (Bus. & Prof.Code, § 17200 et seq.) for
12      Labor Code violations must satisfy class action requirements, but that those requirements
        need not be met when an employee's representative action against an employer is seeking
13      civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab.Code,
        § 2698 et seq.).

14

15   The California Supreme Court explained the rationale of its holding:

16           An employee plaintiff suing, as here, under the Labor Code Private Attorneys
        General Act of 2004, does so as the proxy or agent of the state's labor law enforcement
17      agencies. The act's declared purpose is to supplement enforcement actions by public
        agencies, which lack adequate resources to bring all such actions themselves. (Stats.2003,
18      ch. 906, § 1 [Legislature's findings and declarations].) In a lawsuit brought under the act,
        the employee plaintiff represents the same legal right and interest as state labor law
19      enforcement agencies—namely, recovery of civil penalties that otherwise would have
        been assessed and collected by the Labor Workforce Development Agency. (Lab.Code,
20      § 2699, subds. (a), (f); *see* 95 Cal.Rptr.3d p. 596, 209 P.3d p. 930, *ante*.) The employee
        plaintiff may bring the action only after giving written notice to both the employer and
21      the Labor and Workforce Development Agency (Lab.Code, § 2699.3, subd. (a)(1)), and
        75 percent of any civil penalties recovered must be distributed to the Labor and
22      Workforce Development Agency (*id.*, § 2699, subd. (i)).

23           . . . The act authorizes a representative action only for the purpose of seeking
        statutory penalties for Labor Code violations (Lab.Code, § 2699, subds. (a), (g)), and an
24      action to recover civil penalties "is fundamentally a law enforcement action designed to
        protect the public and not to benefit private parties" (*People v. Pacific Land Research
25      Co.* (1977) 20 Cal.3d 10, 17, 141 Cal.Rptr. 20, 569 P.2d 125).

26   *Arias*, 46 Cal.4th 969, 986, 209 P.2d 923.

27   A fellow judge of this Court has noted the difference between a PAGA claim and a class action:

28   A PAGA claim, therefore, is fundamentally different from a class action in terms of both

24

1
2
3

the interests represented and the relief sought. In light of this essential disparity between the two types of claims, the California Supreme Court held that while actions under PAGA "may be brought as class actions," class certification is not mandatory. *Id.* at 981 n. 5, 95 Cal.Rptr.3d 588, 209 P.3d 923.

4  *Mendez v. Tween Brands, Inc.*, 2010 WL 2650571, at *2 (E.D. Cal. 2010); *see Machado v. M.A.T. &*

5  *Sons Landscape, Inc.,* Case No. CV F 2:09-0459 JAM JFM, 3 (E.D.Cal. July 23, 2009) ("*Arias* controls

6  in federal court and PAGA claims need not be brought as class actions"); *see also Franco v. Athens*

7  *Disposal Co., Inc.*, 171 Cal.App.4th 1277, 1300, 90 Cal.Rptr.3d 539 (2009) (a PAGA claim "is

8  fundamentally a law enforcement action designed to protect the public and penalize the employer for

9  past illegal conduct. Restitution is not the primary object of a PAGA action, as it is in most class

10 actions.")

11      Despite defendants' points to the contrary, the authorities are clear that PAGA claims are law

12 enforcement actions, not class actions, to vitiate F.R.Civ.P. 23 adherence since a PAGA plaintiff brings

13 claims as "the proxy or agent of the state's labor law enforcement agencies." *Arias*, 95 Cal.Rptr.3d 588,

14 209 P.3d at 933.  The remedy sought in a PAGA suit consists of civil penalties, not individual or class

15 damages. Cal. Lab.Code § 2699(a).  This Court disagrees with defendants' notion that F.R.Civ.P. 23

16 trumps PAGA as a procedural statute.  In effect, defendants ask this Court to ignore the California

17 Supreme Court's holding in *Arias* as well as other courts' application of *Arias*.  This Court will not hold

18 Ms. Jeske to strict F.R.Civ.P. 23 prerequisites.

19      Relying on the general purposes of PAGA claims, Ms. Jeske argues that she "is not required to

20 specifically allege the identity of the aggrieved employees who have been the subject of the unlawful

21 employment practices."  Ms. Jeske points to section 2699(a) which permits recovery of civil penalties

22 "through a civil action brought by an aggrieved employee on behalf of himself or herself and **other**

23 **current or former employees** . . ." (Bold added.) Ms. Jeske argues that section 2699(a) "does not limit

24 the employees on whose behalf a PAGA action may be brought to employees with the same job

25 classification, or employees who were subject to the same violations."  Ms. Jeske claims inability "to

26 specifically allege each and every violation as to each and every group of employees at the pleading

27 stage" without discovery.

28      Defendants respond that Ms. Jeske's "overbroad definition of 'aggrieved employees' essentially

creates a class with no limits and threatens to give rise to costly and burdensome discovery as the parties dispute class boundaries."

Other than section 2699(a), Ms. Jeske points to no precise authority to support her imprecise scope of aggrieved employees. As such, Ms. Jeske takes the legally unsupported position that she is entitled to pursue PAGA claims for the universe of Maxim employees. Such position contravenes federal pleading requirements to provide defendants sufficient notice of the claims against them. Ms. Jeske's entitlement to pursue claims for current and former employees must be balanced with an ascertainable scope of aggrieved employees, presumably Maxim healthcare workers employed at Wasco. The complaints lacks sufficient definition of the scope of aggrieved employees, and Ms. Jeske is granted leave to amend to do so.

### Ms. Jeske's UCL Claim Against Individual Defendants

The complaint's (sixth) UCL claim is asserted against Mr. Tagayun and Ms. Blankenship for Ms. Jeske. Defendants fault the absence of underlying meal and rest period violation claims against Mr. Tagayun and Ms. Blankenship to support a UCL claim against them. Defendants further note that Mr. Tagayun and Ms. Blankenship are not subject to individual liability for Maxim's failure to pay wages. *See Jones v. Gregory*, 137 Cal.App.4th 798, 800, 807, 40 Cal.Rptr.3d 581 (2006) ("California law does not support imposing personal liability on corporate officers or agents as 'employers'" in that "a corporate officer or agent does not employ employees—the corporation does"); *Reynolds v. Bement*,36 Cal.4th 1075, 1087,116 P.3d 1162 (2005) ("corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages"). Defendants continue that despite Mr. Tagayun's and Ms. Blankenship's alleged exercise over Ms. Jeske's wages, such control does not "convert" them into employers.

Defendants raise valid points. The complaint merely alleges that Mr. Tagayun and Ms. Blankenship are managers/supervisors. No facts are present to connect Mr. Tagayun and Ms. Blankenship to Maxim control over meal and rest break policies and practices. The complaint at most raises inferences that Mr. Tagayun and Ms. Blankenship carried out Maxim meal and rest break policies and practices. Ms. Jeske offers no meaningful opposition to dismissal of the UCL claims against Mr. Tagayun and Ms. Blankenship. The complaint lacks facts of Mr. Tagayun's and Ms. Blankenship's

1   alleged wrongs to warrant dismissal of the UCL claim against Mr. Tagayun and Ms. Blankenship with

2   prejudice.

3                              **PAGA Claims Against Individual Defendants**

4         The complaint's (ninth and tenth) PAGA meal and rest period violations claims are asserted

5   against Mr. Tagayun and Ms. Blankenship for the aggrieved employees to seek civil penalties.

6   Defendants fault the complaint's absence of allegations that Mr. Tagayun or Ms. Blankenship had

7   "control or responsibility for the aggrieved employees."

8         The complaint identifies Mr. Tagayun as "an account manager/supervisor of Jeske" and Ms.

9   Blankenship as "the manager/supervisor of Jeske."  The complaint's general allegations state that Mr.

10  Tagayun and Ms. Blankenship:

11        1.      Are Maxim "managing agents, employees, executives, officers and/or directors";

12        2.      "[E]xercised control over the wages of employees"; and

13        3.      "[D]esigned and implemented policies regarding meal and rest breaks, working hours an

14                deductions."

15        The PAGA meal and rest period violations claims allege that Mr. Tagayun and Ms. Blankenship

16  "controlled the working conditions of the aggrieved employees, including but not limited to meal and

17  rest breaks."

18        Defendants criticize the complaint's failure to allege facts that Mr. Tagayun or Ms. Blankenship

19  are owners, officers or corporate agents or  "are responsible for the working conditions of all aggrieved

20  employees." Defendants point to the lack of allegations of Mr. Tagayun's and Ms. Blankenship's direct

21  causing of labor violations.  Defendants hold Ms. Jeske to allege facts that Mr. Tagayun and Ms.

22  Blankenship "held positions or committed acts that would render them personally liable for PAGA

23  penalties and wage and hour violations."

24        Ms. Jeske points to section 558, which subjects to civil penalty an employer "or other person

25  acting on behalf of an employer" who commits or causes wage and hour violations.  However, without

26  specific facts of Mr. Tagayun's and Ms. Blankenship's wrongful conduct, reliance on section 558 is

27  unavailing.  The complaint lacks facts that Mr. Tagayun and Ms. Blankenship acted on Maxim's behalf

28  to cause wage and hour violations.  The complaint merely alleges that Mr. Tagayun and Ms. Blankenship

are managers/supervisors.  Nonetheless, Ms. Jeske is granted leave to amend to allege facts to satisfy section 558 requirements as to Mr. Tagayun and Ms. Blankenship.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the complaint's (first) unpaid wages claim;

2. DISMISSES without prejudice the complaint's (second) meal period premiums claim;

3. DISMISSES without prejudice the complaint's (third) rest period premiums claim;

4. DISMISSES without prejudice the complaint's (fourth) waiting time penalties claim;

5. DISMISSES with prejudice the complaint's (fifth) fraud – deceit and misrepresentation claim;

6. DISMISSES without prejudice the complaint's (sixth) UCL claim against Maxim;

7. DISMISSES without prejudice the complaint's (seventh) wrongful termination in violation of public policy claim;

8. DISMISSES without prejudice the complaint's (eighth) PAGA unpaid wages claim;

9. DISMISSES without prejudice the complaint's (ninth and tenth) PAGA missed meal and rest period claims;

10. DISMISSES without prejudice the complaint's (eleventh through fifteenth) PAGA inaccurate records claims;

11. DISMISSES without prejudice the complaint's (sixteenth) section 14 suitable seats claim;

12. DISMISSES without prejudice the complaint's (seventeenth) section 15 inadequate temperature claim;

13. DENIES dismissal of the complaint's (eighteenth) section 2350 sanitary restrooms claim;

14. DISMISSES with prejudice the complaint's (sixth) UCL claim against Mr. Tagayun and Ms. Blankenship;

15. ORDERS Ms. Jeske, no later than January 31, 2012, to file and serve a first amended complaint to cure deficiencies identified in this order and to refrain from amending claims which are not viable and cannot be cured and ADMONISHES Ms. Jeske that she

28

will be given no further opportunities to amend her complaint; and

16.    ORDERS defendants, no later than February 22, 2012, to file and serve papers to respond to the first amended complaint and ADMONISHES defendants to seek F.R.Civ.P. 12 relief based only on strong substantive grounds and to otherwise file and serve an answer to the first amended complaint.

This Court lacks the time and resources to re-do its work of educating the parties on pleadings and to address attacks on adequate, yet imperfect pleadings.   The professionalism of the parties' respective counsel is expected.

Due to bearing the heaviest caseload in the nation with the recent retirement of former U.S. District Judge Oliver Wanger, limited resources, and the need to prioritize criminal and older civil matters over more recently filed actions, this Court ADMONISHES the parties that it is unable to commit to address this action to meet the parties' needs and expectations.  As such, this Court urges the parties to consider the conduct of all further proceedings by a U.S. Magistrate Judge, whose caseload and availability is more accommodating to the parties.  Forms to consent to a U.S. Magistrate Judge are available on this Court's website.

IT IS SO ORDERED.

Dated:    **January 10, 2012**                    /s/ Lawrence J. O'Neill
UNITED STATES DISTRICT JUDGE