1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JENNIFER JESKE,                    )   Case No. 1:11-CV-01838 JLT
                                        )
12            Plaintiff,                )   ORDER RE MOTION TO DISMISS
                                        )   PLAINTIFF'S FIRST AMENDED
13       vs.                            )   COMPLAINT
                                        )
14   CALIFORNIA DEPARTMENT OF           )   (Doc. 20)
     CORRECTIONS AND REHABILITATION, et )
15   al.,                               )   ORDER TRANSFERRING THE MATTER TO
              Defendants.               )   THE CENTRAL DISTRICT OF CALIFORNIA
16   _____)

17                            **INTRODUCTION**

18          On November 11, 2011, Defendants Maxim Healthcare Services, Inc. and individually named

19   Defendants Alvin Tagayun and Ashley Blankenship removed  Plaintiff Jennifer Jeske's ("Plaintiff")

20   Complaint from the Kern County Superior Court on the basis of diversity jurisdiction.  (Doc. 1).

21   Defendants then filed a Motion to Dismiss Plaintiff's individual causes of action for various wage and

22   hour violations and the multiple causes of action under the Private Attorneys General Act ("PAGA") for

23   penalties Plaintiff filed on  behalf of aggrieved employees.  (Doc. 9).  With the exception of the

24   Eighteenth Cause of Action under California Labor Code section 2350 for unsanitary restrooms,

25   Defendants' motion was granted with leave to amend as to the remaining seventeen causes of action.

26   (Doc. 12).  Plaintiff's Unfair Competition Law ("UCL") claim against individual Defendants Mr.

27   Tagayun and Ms. Blankenship was dismissed with prejudice.

28          Defendant Maxim Health Care Services ("Defendant") has now filed a Motion to Dismiss

                                            1

1   Plaintiff's First Amended Complaint ("FAC") with prejudice under the "first to file" rule, or,

2   alternatively, to dismiss Plaintiff's Third through Thirteenth and Sixteenth through Twentieth Causes

3   of Action with prejudice under Rule 12(b)(6).  (Doc. 20).  Plaintiff's Opposition asserts that her FAC

4   should not be dismissed under the "first to file" rule, as the claims are not identical.  Plaintiff further

5   asserts that she has pled sufficient facts to defeat Defendant's Motion to Dismiss.  (Doc. 23).  Defendant

6   likewise filed a Reply which further addresses the issues raised by Plaintiff.

7       The Court finds that the first-to-file rule applies, and therefore exercises its discretion to transfer

8   the case to the Central District to preserve potential issues with the limited claims that were not

9   presented in <u>Buckland</u>.  With the exception of the 16th Cause of Action and the definition of the the

10  "aggrieved employees" for whom Plaintiff will seek a PAGA penalty, the Court does not address the

11  merits of Defendant's Motion to Dismiss, pursuant to Rule 12(b)(6).[1]

12                        **DISCUSSION**

13  **I.    PLAINTIFF'S 14th, 15th and 16TH CAUSE OF ACTION**

14      Of the three claims that differ from the <u>Buckland</u> matter, Defendant makes a two-fold attack.

15  First, as to each of the claims, Defendant argues that the definition outlining the scope of the "aggrieved

16  employee" is overly broad.  Second, Defendant argues that Plaintiff has failed to demonstrate that the

17  16th cause of action was properly exhausted.

18      **A.    The definition of "aggrieved employee" is impermissibly overbroad**

19      In the order dismissing the PAGA claims in the original complaint, the Court found,

20  Ms. Jeske is correct that she need not have suffered all PAGA violations for which
    she seeks to pursue civil penalties. However, she ignores defendants' chief attack that
21  the complaint fails to identify aggrieved employees beyond reference to their Maxim
    employment. The complaint is unclear as to whether it seeks to pursue PAGA claims
22  for certified nursing assistants, such as Ms. Jeske, or other healthcare employees. The
    complaint fails to identify how particular aggrieved employees were subject to
23  particular violations. Ms. Jeske fails to justify the complaint's overly broad scope of
    aggrieved employees. **This Court is unable to sanction PAGA claims for**
24  **imprecisely defined aggrieved employees but grants Ms. Jeske leave to amend to**
    **define precisely the aggrieved employees for whom she seeks to recover civil**
25  **penalties.**

26

27      [1]In light of the Court intention to transfer this matter, it refrains of issuing orders as to any of the claims duplicated
28  in the <u>Buckland</u> matter.  Defendant may raise its arguments related to these causes of action when appropriate and if permitted
    by the transferee court.

(Doc. 12 at 18, emphasis added.)  The Court continued,

> Other than section 2699(a), Ms. Jeske points to no precise authority to support her imprecise scope of aggrieved employees. As such, Ms. Jeske takes the legally unsupported position that she is entitled to pursue PAGA claims for the universe of Maxim employees. Such position contravenes federal pleading requirements to provide defendants sufficient notice of the claims against them. Ms. Jeske's entitlement to pursue claims for current and former employees must be balanced with an ascertainable scope of aggrieved employees, presumably Maxim healthcare workers employed at Wasco. **The complaints** [sic] **lacks sufficient definition of the scope of aggrieved employees, and Ms. Jeske is granted leave to amend to do so.**

Id. at 26, emphasis added.  As noted already by the Court, Plaintiff is obligated to give "fair notice as to what the scope of the PAGA claim is."  Chie v. Reed Elsevier, Inc., 2011 U.S. Dist. LEXIS 99153 at *11-12 (N.D. Cal. Sept. 2, 2011) citing Fed. R. Civ. P. 8(a)(2).  Nevertheless, the only factual support for Plaintiff's 14th, 15th and 16th causes of action relates to her specific situation.  For example, as to the "seat" claim, Plaintiff describes how she is required to observed inmates through a "small rectangular window."  (Doc. 13 at 32-33) She contends that this job did not require standing and it could be accomplished from a seated position.  Id.  This gives Defendant fair notice as to Plaintiff 's claimed violation specifically and for others like her who perform this duty in situations where the window is positioned in such a way as to allow viewing while in a seated position.  However, the suggestion that Plaintiff has given fair notice that every other Maxim employee in this state has been improperly denied a chair, is unsupported.  Likewise, the suggestion that every employee of Maxim no matter where they worked was not provided a sanitary restroom is simply not plausible. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009).  Even if this was plausible, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id.  Indeed, a plaintiff's obligation to provide the grounds of entitlement to relief under Rule 8(a)(2) requires more than "naked assertions," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).

Nevertheless, despite being granted leave to amend the complaint to provide the required specificity, Plaintiff did not do so.  In her original complaint, Plaintiff alleged that the scope of the aggrieved employees included "all employees staffed by MHS at state and federal prisons and other facilities within the State of California."  (Doc. 1-1 at 12) In the first amended complaint, Plaintiff defines the group to be represented as all "those current or former employees of Defendants against

3

1  whom one or more of the alleged violations was committed on or after the date one year prior to the

2  filing of the complaint in this action."  (Doc. 13 at 19-20) Thus, in essence, the original complaint

3  defined the group as any employee who suffered a violation during the relevant period and the amended

4  complaint, in essence, does the same, though it clarified that Plaintiff sought a PAGA penalty for all

5  former employees too.  Thus, either the definition was unchanged by the amendment or, in fact, it was

6  broadened.  Notably, the Court specifically ordered Plaintiff to "define precisely the aggrieved

7  employees for whom she seeks to recover civil penalties."  Rather than complying with this order,

8  Plaintiff merely re-worded the definition and did not address the Court's concern that particular job

9  classifications and worker location should be specified.

10  At the hearing on the motion to dismiss, Plaintiff's counsel explained that though Plaintiff *could*

11  amend the complaint to provide a more specific information about the scope of the group to be

12  represented, she did not wish to do so for tactical reasons.  Specifically, counsel expressed that Plaintiff

13  wanted to be able to conduct discovery on a company-wide basis, *to determine if* there are violations at

14  Maxim work locations other than Wasco State Prison and *to determine if* employees in non-CNA jobs

15  also suffered violations.  Counsel explained that only by alleging in this manner would Plaintiff be

16  allowed to conduct discovery related to other locations and related to other job classifications because,

17  of course, discovery will be allowed only as matters within the confines of the complaint.  However,

18  counsel ignores that *before* discovery may occur, Plaintiff must make a prima facie showing that there

19  *has been a violation* such to justify the discovery. Fed. R. Civ. P. 26(b)(1).  Plaintiff's counsel correctly

20  summarized PAGA as a scheme that allows an employee to step into the law enforcement role of the

21  state to vindicate the rights of other employees.  However, just as the state would be prohibited from

22  requiring an employer to produce information without any showing that the employer is engaged in

23  Labor Code violations, Plaintiff is similarly prohibited from conducting discovery on the off-chance that

24  a violation has occurred.

25  The Court has already ordered Plaintiff to amend her description "to define precisely the

26  aggrieved employees for whom she seeks to recover civil penalties." (Doc. 12 at 18)  As noted above,

27  though Plaintiff amended the definition, she failed to amend it consistently with the Court's order. (Doc.

28  13 at 19-20) This failure is striking given the Court previously admonished Plaintiff that her failure to

4

1   comply would result in a dismissal of the claim.  The Court order reads,

2          [T]his Court: . . .

3          [¶¶ ]

4          . . .ORDERS Ms. Jeske, no later than January 31, 2012, to file and serve a first amended
           complaint **to cure deficiencies identified in this order** and to refrain from amending
5          claims which are not viable and cannot be cured **and ADMONISHES Ms. Jeske that
           she will be given no further opportunities to amend her complaint**; . . .
6

7   In light of counsel's position that Plaintiff is unwilling to amend in the manner required by the Court,

8   it is clear that providing leave to amend would be futile.  However, because it would be overly harsh to

9   dismiss the 14th through 16th causes of action based upon counsel's defiance, the Court concludes that

10  the motion to dismiss is **GRANTED to the extent that the representative group extends beyond**

11  **Wasco State Prison or beyond non-exempt nursing staff**.

12         **B.      Plaintiff has sufficiently alleged exhaustion of her administrative remedies related**

13                   **to the 16th cause of action**

14         Defendant alleges that Plaintiff failed to exhaust her administrative remedies as to the 16th cause

15  of action because she did not give Defendant an opportunity to cure the alleged violation, in accordance

16  with Labor Code section 2699.3(c).  Defendant contends that after Plaintiff gave notice to the LWDA

17  and Maxim, she had to give Defendant an opportunity to cure and then she was required to provide an

18  additional written notice to the LWDA if she disputed that the violation had been cured.  (Doc. 26, at

19  18).  Toward this end, Defendant alleges that Plaintiff did not allow Defendant to cure or give notice she

20  found the "cure" to be inadequate.

21         Notably, California Labor Code section 2699.3(c) provides in pertinent part,

22         A civil action by an aggrieved employee pursuant to subdivision (a) or (f) of Section
           2699 alleging a violation of any provision other than those listed in Section 2699.5 or
23         Division 5 (commencing with Section 6300) shall commence only after the following
           requirements have been met:
24
           (1) **The aggrieved employee or representative shall give written notice by certified
25         mail to the Labor and Workforce Development Agency and the employer** of the
           specific provisions of this code alleged to have been violated, including the facts and
26         theories to support the alleged violation.

27         (2)

28          (A) **The employer may cure the alleged violation within 33 calendar days of the**

                                              5

**postmark date of the notice. The employer shall give written notice by certified mail within that period of time to the aggrieved employee or representative and the agency if the alleged violation is cured**, including a description of actions taken, and no civil action pursuant to Section 2699 may commence. **If the alleged violation is not cured within the 33-day period, the employee may commence a civil action pursuant to Section 2699.**

(B) No employer may avail himself or herself of the notice and cure provisions of this subdivision more than three times in a 12-month period for the same violation or violations contained in the notice, regardless of the location of the worksite.

(3) **If the aggrieved employee disputes that the alleged violation has been cured, the aggrieved employee or representative shall provide written notice by certified mail**, including specified grounds to support that dispute, to the employer and the agency. **Within 17 calendar days of the postmark date of that notice, the agency shall review the actions taken by the employer to cure the alleged violation, and provide written notice of its decision by certified mail to the aggrieved employee and the employer**. The agency may grant the employer three additional business days to cure the alleged violation. If the agency determines that the alleged violation has not been cured or if the agency fails to provide timely or any notification, the employee may proceed with the civil action pursuant to Section 2699. If the agency determines that the alleged violation has been cured, but the employee still disagrees, the employee may appeal that determination to the superior court.

Plaintiff alleges that she gave written notice to the LWDA and Maxim and attaches her notice as Exhibit 1 to the amended complaint. (Doc. 13 at 20, 48-59) Plaintiff alleges further that, "The LWDA did not respond within 33 days of the postmark of the notice."[2] Id. at 20.  According to 2699.3(c)(2), once the employer receives the written notice of the alleged violation, the employer must, within the 33-day period cure the violation and give written notice of the cure.  On the other hand, an employer is only able to take advantage of this safe harbor provision three times in a 12-month period. Cal. Lab. Code 2699.36(c)(2)(B).  If the employer gives timely notice of the cure, the employee may provide an additional written notice to the LWDA and the employer if she disagrees that the "cure" actually solved the problem. Cal. Lab. Code 2699.36(c)(3).  Then, the agency has 17 days within which to determine whether the "cure" was adequate. Id.

Here, Plaintiff does not allege that Maxim failed to provide written notice that the violations were cured. (Doc. 12 at 20) However, the Court finds Plaintiff's allegations are sufficient to demonstrate

---

[2] To be entitled to commence a civil action under California Labor Code § 2699(a) or (f) that alleges a violation listed in Section 2699.5, subdivision (a) of 2699.3 requires only that the LWDA fail to respond within 33 days of the aggrieved employee's written notice.  Indeed, there is no dispute that there the allegations are sufficient to allege exhaustion as to the 14th and 15th causes of action.  However, where, as in the 16th cause of action here, the alleged violation is not listed in 2699.5.  Thus, for this cause of action, exhaustion is determined according 2699.3(c).

exhaustion especially in light of the fact that exhaustion is an affirmative defense.  Therefore, the motion to dismiss on this ground is **DENIED**.

## II.       THE FIRST-TO-FILE-TO-FILE RULE

Defendant asserts that Plaintiff's FAC should be dismissed with prejudice, stayed or transferred as it involves the same parties and the same issues as at least one previously filed lawsuit– Buckland , et al v. Maxim Healthcare Services, Inc. Case No . CV 12-0095 R (FMOx). (Doc. 20, at 9-13.)  Plaintiff disagrees that the case should be dismissed, but suggests that the case should be transferred to the United States District Court for the Central District of California where at least two other cases against the Defendant by the same parties are currently pending.

In Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982), the Ninth Circuit Court of Appeals explained the first-to-file rule as follows:

> There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. [internal citations omitted].   .  .  . Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action.

(Id. at 95; see also Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997) and Church of Scientology of Cal. v. U.S. Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979) (explaining that the purpose of the rule is to promote efficiency, to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.)  Given the purposes of the rule, the rule should not be disregarded lightly. (Id.)

To determine whether the first-to-file rule applies, the Court looks to three essential factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. Wright v. RBC Capital Mkts. Corp., 2010 U.S. Dist. LEXIS 80165, 14-15 (E.D. Cal. June 24, 2010) (citing L. Cohen Grp. v. Herman Miller, Inc., No. C 05-4476 SI, 2006 U.S. Dist. LEXIS 2301, *5-6 (N.D. Cal. Jan. 19, 2006).  However, this "first to file" rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."  Medlock v. HMS Host USA, Inc., 2010 U.S. Dist. LEXIS 133143, 8 (E.D. Cal. Dec. 15, 2010) (citing Pacesetter, 678 F.2d 93, 94-95).

1   "The U.S. Supreme Court emphasizes that the solution of these problems involves

2   determinations concerning '[w]ise judicial administration, giving regard to conservation of judicial

3   resources and comprehensive disposition of litigation,' and that 'an ample degree of discretion,

4   appropriate for disciplined and experienced judges, must be left to the lower courts.'" Medlock , 2010

5   U.S. Dist. LEXIS 133143, at 8 (citing and quoting  Kerotest Manufacturing Co. v. C-O-Two Fire

6   Equipment Co., 342 U.S. 180, 183-84, 72 S.Ct. 219, 221, 96 L. Ed. 200, 195 (1952).

7   **1.   <u>Chronology</u>**

8       In support of its motion to dismiss, Defendant has filed a Request for Judicial Notice which

9   includes complaints and amended complaints from the cases referenced in Defendant's notice of related

10  cases. (Doc. 15).  The Court takes judicial notice of Exhibits A-I filed in support of Defendant's motion

11  to dismiss.  Here, the parties do not dispute that <u>Buckland v. Maxim</u> was filed before the current action

12  ("<u>Jeske</u>").  In fact, according to the pleadings filed by Defendants, <u>Buckland v. Maxim</u> was filed in

13  Alameda County Superior Court on September 7, 2010.  Plaintiff filed her lawsuit in Kern County

14  Superior Court on September 19, 2011–over a year after the <u>Buckland</u> complaint was filed.  Thus, the

15  <u>Buckland</u> case was clearly filed first.  (Doc. 1).[3]

16  **2.   Substantial Similarity of Parties and Claims**

17      The Court recognizes that neither parties nor claims need be identical in the two actions. Wright,

18  2010 U.S. Dist. LEXIS 80165, at 15.  Substantial similarity is sufficient. (Id. (citing Biotronik, Inc. v.

19  Guidant Sales Grp., No. 09-443-KI, 2009 U.S. Dist. LEXIS 52635, *5-6 (D. Or. June 22, 2009) (holding

20  "[t]he parties . . . need not be exactly identical; there may be additional parties . . . ); Walker v.

21  Progressive Casualty Ins. Co., C 03656 R, 2003 U.S. Dist. LEXIS 7871, *7-8 (W.D. Wash. May 9, 2003)

22  (recognizing that "[s]light differences in the claims asserted do not prevent application of the rule where

23  the underlying complained-of conduct is almost identical.").  Thus, the rule is satisfied if some of the

24  parties in one matter are also in the other matter, regardless of whether there are additional unmatched

25  parties in one or both matters." Medlock v. HMS Host USA, Inc., 2010 U.S. Dist. LEXIS 133143, at 10

26

27      [3] The Court cannot conclude that any of the other complaints filed with Defendant's Request for Judicial

28  Notice were filed before <u>Jeske</u>: <u>Yung v. Maxim</u> was filed in San Diego County Superior Court on October 8, 2010, (Doc. 21, Exh. A and H) but the Court cannot determine from the pleadings the date the <u>Castro v. Maxim</u> case was filed.  Defendants assert that it was filed on January 6, 2009.  (Doc. 20 at fn 1 and Doc. 21 at Exh. G).

(E.D. Cal. Dec. 15, 2010) (citing Intersearch Worldwide, Ltd. v. Intersearch Group, Inc., 544 F.Supp.2d 949, 959, n. 6 (N.D. Cal. 2008)).  Given that Buckland is the only related case clearly filed before Plaintiff's case here, the Court will only analyze the similarity of the parties and claims of Buckland and the case at hand.

### a.    Parties

Buckland involves the same Defendant as here.  (Docs. 1 and 21, Exh. A).  While the individually named Plaintiffs in Buckland differ from here, they seek to represent the same class of persons as here, including Plaintiff herself: Buckland describes its California Nurse Class as "[a]ll persons currently or formerly employed by defendants in California" as a Licensed Vocational Nurse, Licenced Practical Nurse, Practical Nurse, Basic Nurse or an equivalent position within four years preceding the filing of this complaint until the entry of judgment after trial.  (Doc. 21-2, Exh. A at 10). Here, the FAC describes the class as all non-exempt employees of Defendant in California as nursing employees, including Registered Nurses, LVNs, home care nurses and CNAs, who worked for Defendant within four years of the filing of the suit.  (Doc. 13, Exh. F, at 6). Based upon the descriptions of the Plaintiff class, the parties in the cases are substantially similar.

Plaintiff faults Defendant's failure to cite any authority for the proposition that Plaintiff's individual claims can be dismissed with prejudice under the "first to file" doctrine.  However, Weinsten v. Metlife Inc. , 2006 U.S. Dist. LEXIS 83115 (N.D. Cal. 2006), cited by Defendants, involves a plaintiff who, like Plaintiff here, brought actions both individually and on behalf of all persons similarly situated. (Id. at 2).  In determining whether the "first in time" rule applied, the Weinsten Court noted that "in a class action, it is the class, not the representative that is compared." (Id. at 12).  "If the parties represent the same interests the court may determine the second action is duplicative." (Id. at 10-11 (citing Barapind v. Reno, 72 F.Supp.2d 1132, 1145 (E.D. Cal. 1999).

Plaintiff does not assert that the two classes differ.  She merely contends, without citation to any authority, that she is entitled to pursue her individual claims against Defendant regardless of any pending class action in which she may be a member.  (Doc. 23, at 1).  Contrary to Plaintiff's assertion, "a litigant has no right to maintain a second action duplicative of another."  Barapind, 72 F.Supp.2d at 1142.  The Court finds no significant difference between the parties.  The plaintiffs in both cases were employees

of Defendant, and because Plaintiffs in the instant action will be bound by the judgment in the Buckland case, the parties are substantially similar for purposes of the first-to-file rule.  Alakozai v. Chase Inv. Servs. Corp., 2012 U.S. Dist. LEXIS 30759 *15 (C.D. Cal. Mar. 1, 2012).

### b.    Claims

Defendant argues that this action is substantially similar to Buckland. Plaintiffs, on the other hand, claim there are "numerous claims" raised by her that are not present in Buckland.  (Doc. 23, at 1). However, it appears that of the 20 causes of action, the only claims raised here that are not encompassed in Buckland, are three alleged PAGA claims relating to seating, restrooms, and temperature (the 14th, 15th, and 16th causes of action).  (Docs. 13 and 21-2, Exh. B).

Aside from the these three PAGA claims, the remainder of the claims are substantially similar, if not identical, to those raised in Buckland.  The dispute alleged in both cases against Defendants is whether the non-exempt nursing employees were properly and timely paid regular wages, overtime wages, wages due at termination, whether they were given or paid for rest periods, meal periods, and accurate wage statements, the appropriateness of Defendant's business practices, and the whether such actions will result in penalties under the PAGA. The fact that the two cases involve some distinct issues does not prevent application of the rule, as only substantial similarity is required.  As a result, the Court finds that the claims here are substantially similar to those in Buckland.  Wright, 2010 U.S. Dist. LEXIS 80165 *20.  Nonetheless, the fact that this matter presents claims not present in the Buckland action tends to weigh against outright dismissal.  When "issues in the two actions are distinct," a district court does not abuse its discretion in refusing to dismiss. Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997).

Plaintiff alleges if the action is dismissed, Defendant will be insulated from Jeske's PAGA claims relating to unsanitary restrooms, available seating, and temperature because the issues were not raised in the Buckland PAGA letter.  (Doc. 23 at 5)  Defendant dismisses Plaintiff's argument as disingenuous because Plaintiff's PAGA claims would be tolled as of the filing of the Buckland suit. (Doc. 26 at 10) However, Defendant ignores Plaintiff's concern that the PAGA claims set forth in the 14th, 15th and 16th causes of action were not raised in Buckland, so they could not have been properly exhausted in that matter.

III.    **CONCLUSION AND ORDER**

Under the first-to-file rule, this Court has discretion to "transfer, stay, or dismiss this case in the interest of efficiency and judicial economy." Medlock, 2010 U.S. Dist. LEXIS 133143 *17 (citing Cedars-Sinai Medical, 125 F.3d at 769.  The parties acknowledge that Plaintiff's claims are not properly before the Eastern District.  There are at least three other class actions pending in the Central District of California that allege similar wage and hour claims against the Defendant on behalf of a nurse class. In order to conserve resources (especially if the pending Central District cases can be consolidated) and avoid issues Plaintiff may encounter in pursuing the PAGA claims for temperature, seating, and restroom conditions not addressed in the Buckland case, the balance of sound judicial administration, conservation of judicial resources, comprehensive disposition of litigation, and efficiency favor transfer of this action to the Central District.

For the reasons discussed above, the Court **ORDERS**:

1.    As to the 14th, 15th and 16th causes of action, the motion to dismiss is **GRANTED** without leave to amend, **to the extent that** Plaintiff's  description of the "aggrieved employees" for which she will seek a penalty under PAGA, includes Maxim work locations other than Wasco State Prison and for those in job classifications other than non-exempt nursing staff;

2.    As to the 16th cause of action, the motion to dismiss based upon a failure to exhaust administrative remedies is **DENIED**;

3.    This action is **TRANSFERRED** to the U.S. District Court, Central District of California;

4.    The clerk is **DIRECTED** to take necessary steps to transfer this action to the Southern Division of the U.S. District Court, Central District of California and to close this action;

5.    All dates, hearings or motions pending in this matter are **VACATED**.

IT IS SO ORDERED.

Dated:   **March 29, 2012**                              **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE

11